UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MOOREHEAD,

    Plaintiff(s),

v.

CHERTOFF,

    Defendant(s).

NO. C07-1205MJP

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The above-entitled Court, having received and reviewed:

1. Defendant's Motion for Summary Judgment (Dkt. No. 14)
2. Plaintiff's Opposition to Defendant's Motion for Summary Judgment (Dkt. No. 24)
3. Defendant's Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment (Dkt. No. 27)

and all attached exhibits and declarations, makes the following ruling:

IT IS ORDERED that the motion is PARTIALLY GRANTED and PARTIALLY DENIED. Summary judgment is GRANTED as to Plaintiff's gender discrimination claim, which is hereby DISMISSED with prejudice; summary judgment is DENIED as to Plaintiff's retaliation claim.

**Background**

Plaintiff is an airport baggage screener for the Transportation Security Administration ("TSA") who received a disciplinary sanction of three days' suspension when she was found with her eyes closed while staffing a screening machine which operates by visual alarm. (Her supervisor, Ms. Suchower, suspected Plaintiff was asleep, which is considered a serious offense; because Suchower didn't think she could prove Plaintiff was sleeping, the infraction was reduced to "inattention to duty.") At the time Plaintiff was discovered with her eyes closed, there was no luggage moving

**ORDER ON DEF
SUMM JMT MTN- 1**

through the screener. Suchower had originally contemplated a 14-day suspension, but was informed by her superior that she didn't have the authority to issue that penalty. Plaintiff does not contest that she had her eyes closed (or that some disciplinary response was warranted), but denies that she was sleeping, and claims the sanction was excessive, discriminatory and retaliatory. The incident occurred on April 20, 2005; the three-day suspension was imposed on May 10, 2005.

Plaintiff had no other disciplinary actions in the two and a half years prior to this incident during which she worked for TSA. Plaintiff had, however, filed a series of EEOC complaints (she lists four complaints prior to the incident, plus a separate mediation through TSA's alternative dispute resolution program; she filed a fifth EEO complaint the day after the disciplinary incident – unrelated to the incident – but before the sanction was handed down).

**Discussion**

This opinion will analyze Plaintiff's gender discrimination and retaliation claims separately.

Gender Discrimination

In the absence of direct evidence that she was a victim of gender discrimination, Plaintiff's circumstantial case must pass through the McDonnell Douglas analysis: Plaintiff must present a prima facie case of discrimination, triggering Defendant's burden to articulate legitimate non-discriminatory reasons for its actions, which in turn shifts the burden to Plaintiff to demonstrate that Defendant's reasons are pretextual. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

The elements of a prima facie case for gender discrimination are enumerated in Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000). Regarding Plaintiff's proof of the four elements of her prima facie case for discrimination (membership in a protected class, job performance up to legitimate expectations, adverse employment action and similarly situated non-protected individuals receiving more favorable treatment), Defendant does not contest the first and third elements: Plaintiff is a member of a protected class who received an adverse employment action.

Defendant argues first that, in closing her eyes at her screening post, Plaintiff was not performing according to her employer's legitimate expectations. TSA cites no case or statutory authority for the position that a single incident of an on-the-job infraction disqualifies a plaintiff from this requirement. The Ninth Circuit has characterized the crux of the requirement as whether the plaintiff "adequately" performed his or her job (Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1031 (9th Cir. 2006)), which suggests a standard less than perfect performance. Defendant again cites no case law for the proposition that an employer has a "legitimate" expectation that an employee will <u>never</u> violate a job requirement. Ultimately, it is not a persuasive argument.

The more serious challenge to Plaintiff's prima facie case concerns her proof of the existence of "similarly situated" non-protected employees who received more favorable treatment. Plaintiff does present a lengthy list of infractions which she alleges were committed by male co-workers who received either no sanction or a lesser sanction. The Court recites them here for purposes of the following analysis of the strength of Plaintiff's claim:

- **Wesley Rock:** verbally reprimanded by Suchower for talking to co-workers instead of watching the baggage monitor (through which, in contrast to Plaintiff's situation, baggage was moving);

- **Will Hayes:** verbally warned after being discovered by his and Plaintiff's supervisor[1] asleep at the hand search table;

- **David Ingulsrud:** observed by Plaintiff asleep on duty on two occasions and allegedly never disciplined (there is no allegation that Suchower supervised this employee);

- **Wayne Mandeville:** observed by Plaintiff "intoxicated at work and passed out during lunch." Plaintiff alleges that "Mandeville's lead was well aware of his condition" and

---

[1] Plaintiff's counsel alleges, in her responsive briefing, that Suchower supervised Hayes and Moorehead "at the material times," (Pltf Response, p. 20) but there is no evidence of this in Plaintiff's exhibits or declarations (including Plaintiff's deposition excerpts).

**ORDER ON DEF
SUMM JMT MTN- 3**

|   |   |
|---|---|
| 1 | no discipline was ever issued. No allegation is made that Suchower was this man's |
| 2 | supervisor; |
| 3 | • **Nicholas Metcalf:** observed by Plaintiff asleep on duty in the baggage screening area. |
| 4 | Plaintiff presents a hearsay account of a conversation with another co-worker who said |
| 5 | he informed Suchower (who was allegedly the screening manager at the time). There is |
| 6 | no evidence presented by Plaintiff that Suchower was aware of this, and Suchower |
| 7 | does not indicate that she was. There is no record of discipline in Metcalf's file; |
| 8 | • **Male screener #506699:** personnel record reveals multiple incidents of infractions and |
| 9 | breaches of baggage security procedures and no discipline beyond a "letter of |
| 10 | counseling" (and no evidence that Suchower was either his supervisor or aware of the |
| 11 | infractions); |
| 12 | • **William Wagner:** Plaintiff reported a threat of physical violence, but no disciplinary |
| 13 | action taken. Again, there is no evidence that this employee was supervised by |
| 14 | Suchower. |

Plaintiff's Response, pp. 7-8.

Defendant cites cases which define "similarly situated" as "similar in all material respects" (Moran v. Selig, 447 F.3d 748, 755 (9th Cir. 2006)) and argues that the case law has interpreted "similarly situated" to mean "the *same* conduct under *identical* circumstances." Def Mtn., p. 9; emphasis supplied. This overstates the language of the cases. None of the cases cited by Defendant require that the conduct be the <u>same</u> in all instances (in the circumstances of this case, for example, only incidents where co-workers closed their eyes on the job), merely that the conduct be "similar." (See Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997) and Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617-618 (7th Cir. 2000) for language articulating the "similar, not identical, conduct" rule.) Considering the infraction for which Plaintiff was disciplined – "inattention to duty" – <u>any</u>

**ORDER ON DEF**
**SUMM JMT MTN- 4**

conduct which could be characterized as being inattentive while on the job (e.g., talking to other co-workers, talking on a cell phone, falling asleep, closing the eyes, etc.) would qualify as "similar." The only examples cited by Plaintiff which fall outside this definition of "similar conduct" are the allegation that she was physically threatened and the intoxication/"passed out in the lunch room" report.

But Plaintiff has two other serious problems of proof. First, the cases are clear that, where the discriminatory allegations concern a supervisor, that same supervisor must be involved in all instances of "similarly situated" conduct.[2] Only two of Plaintiff's "similarly situated" male co-workers fall into that category – Rock and Metcalf. The Metcalf example has other proof problems (see *infra*), and ultimately the Court is left with only one solid example of a similarly situated non-protected employee treated differently by the same supervisor for similar conduct. This is insufficient. The case law is clear that a plaintiff must produce evidence of similarly-situated "employee*s*" who are treated more favorably. This makes sense from a policy and equity standpoint – an isolated incident of disparate treatment does not create the inference of discriminatory policies or practices sufficient to warrant constitutional protection. Plaintiff is required to establish a pattern of discriminatory conduct and she has failed to do that.

Secondly, while Plaintiff cites considerable case law regarding the "minimal" quantum of proof required to defeat summary judgment in an employment discrimination case (Plaintiff Opposition, p. 1), it still remains the case that, once the moving party has met its initial burden on summary judgment, the burden shifts to her to establish the existence of the elements essential to her case, on which she will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). While Plaintiff presents considerable anecdotal evidence of disparate, more favorable treatment of males in

---

[2] "[A] court must look at all relevant factors. . . includ[ing] whether the employees 'dealt with the same supervisor..." Patterson v. Avery Dennison Corp., 281 F.3d 676, 680 (7th Cir. 2002)(internal citations omitted); "[T]his [showing that others are 'similarly situated'] normally entails a showing that the two employees dealt with the same supervisor..." Radue, *supra* at 617-618.

**ORDER ON DEF**
**SUMM JMT MTN- 5**

her workplace, almost none of it goes to the element of her case which she must establish at trial; namely, that "similarly-situated" males (supervised by the same supervisor, engaged in the similar "inattentive" conduct) were not treated as severely as she was. The evidence she does present which is relevant is partially inadmissible. This failure of proof is ultimately fatal to her gender discrimination claim.

Her allegations regarding Metcalf (the only other male besides Rock whom Plaintiff claims was supervised by Suchower) suffer from this problem. Plaintiff alleges that she saw Metcalf sleeping on the job, but her only evidence that Suchower was aware of it is a hearsay report from another co-worker that Suchower was told. There is no declaration from the co-worker to that effect, and no admission from Suchower that she saw or was informed of the conduct. The evidentiary deficiencies in this allegation render it inadmissible for consideration, leaving Plaintiff with the isolated example of Rock to support her "similarly situated employees" element. Plaintiff has failed to meet her burden of proof in this aspect of her case and Defendant is entitled to summary judgment on Plaintiff's gender discrimination claim.

Retaliation

The sequence and burden of proof for establishing a retaliation claim are identical to those required to establish the gender discrimination claim as enunciated in McDonnell Douglas, *supra*. The prima facie elements of retaliation require Plaintiff to show that (1) she was engaged in a protected activity; (2) Defendant subjected her to an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action. Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000)(citing Steiner v. Showboat Operating Co., 25 F.3d 1459, 1464 (9th Cir. 1994)). Plaintiff

alleges that both Suchower and Assistant Director D.B. Rice retaliated against her. TSA concedes the first two elements.[3]

Defendant argues first that Plaintiff cannot establish her prima facie case because the lapse of time between her protected activity and the adverse employment action severs the causal connection between the two events. Plaintiff relates the following instances of "protected activity":

1. **April 14, 2003:** Plaintiff filed an informal EEO complaint with the TSA Office of Civil Rights ("OCR") following her removal from the lead screener position.
2. **November 18, 2003:** Plaintiff filed a 2nd informal EEO complaint re: Equal Pay Act violation.
3. **December 3, 2004**: Plaintiff filed a 3rd informal EEO complaint w/ TSA OCR.
4. **January 18, 2005:** Plaintiff "tried" to mediate her December 3, 2004 claim through TSA alternative dispute resolution program.
5. **March 5, 2005:** Plaintiff filed a formal EEO complaint re: failure to promote her.
6. **April 21, 2005:** Plaintiff filed an informal complaint with TSA OCR re: failure to select her for supervisory screener position.

Pltf Response, pp. 8-9.

Defendant initially argues that too much time elapsed between Plaintiff's "protected activity" and the complained-of adverse reaction, but TSA only alludes to the first EEO complaint (following Plaintiff's rotation out of the lead screener position) which was two years prior to the disciplinary incident. Case law is cited that a significant lapse of time will serve to dispel any inference of a causal connection between a protected activity and an adverse employment action. Clark County School

---

[3] Filing an EEOC complaint, participating in an EEO proceeding and making an informal complaint to a supervisor are all protected activities. Ray v. Henderson, 217 F.3d 1234, 1240, n. 3 (9th Cir. 2000); Manatt v. Bank of America, 339 F.3d 792, 800, n. 8 (9th Cir. 2003).

**ORDER ON DEF
SUMM JMT MTN- 7**

District v. Breeden, 532 U.S. 268, 273 (2001); Manatt v. Bank of America, 339 F.3d 792, 800-802 (9th Cir. 2003).

This is not a well-taken argument. Plaintiff filed EEO complaints (and utilized the TSA alternative dispute resolution program) to process her employment grievances from April 2003 all the way through April 2005. Defendant cannot pick the protected activity that is most remote in time and ignore all the complaints which followed.

Defendant also asserts that it is "axiomatic" that a retaliation claim requires proof that the discriminating official was aware of the protected activity. Def Reply, p. 6. No case authority is cited for this "axiom." But even if TSA were to establish the rule by citation to precedent, they would not prevail on this point. Although Suchower denies any knowledge of EEO activity on Plaintiff's part, Plaintiff relates an incident in September 2004 where Suchower informed Plaintiff that she needed to go upstairs and call an EEO investigator (Montoya Decl., Moorehead Depo, Ex. A, 26:9-27:13). Drawing every inference in favor of the nonmoving party, as the Court is required to do, for purposes of this motion Plaintiff has established a genuine issue of material fact concerning Suchower's knowledge of her protected activities.

However, Plaintiff's allegations regarding Suchower still founder on the issue of the lapse of time between the supervisor's awareness of Plaintiff's participation in a protected activity (September 2004) and her adverse employment action (May 2005). The cases hold clearly that the temporal proximity must be "very close" and that a lapse in time of as little as three months can negate a finding of causality based on temporal proximity. Clark County School District, *supra* at 273. While the Court might question whether, in the case of an employee like Plaintiff (who appears to be basically a violation-free worker) an aggravated supervisor might not wait eight or nine months to find the opportunity to retaliate against a "troublesome" but well-behaved employee, the Supreme Court precedent is clear, and Plaintiff's proof of retaliation concerning Suchower is inadequate.

Suchower's superior, Assistant Director D.B. Rice, is another story, however. He is named in the retaliation claim as the officer who ratified Suchower's decision to suspend Plaintiff for three days. He acknowledges that he was aware of Plaintiff's EEO activities (Montoya Decl., ¶ 38, Ex. Y), and Defendant makes no claim that Rice's knowledge of Plaintiff's protected activity is too remote in time to support a retaliation claim. Instead, Defendant argues that because Rice did not "initiate" the disciplinary action, he cannot be said to be liable for any retaliatory animus. "Mr. Rice would not have been involved if Ms. Suchower had not issued a proposed suspension." Def Reply, p. 8.

The Court fails to see the relevance of this distinction. Rice was Suchower's superior and had the authority to disapprove the proposed sanction (there is evidence that Suchower's original proposal of a 14-day suspension was disapproved). And the retaliatory activity is not the disciplinary action itself (Plaintiff concedes that some form of disciplinary response was warranted), but the penalty which was handed down for the violation – a penalty which Rice ratified. Plaintiff has established her prima facie case of retaliation on the basis of Rice's knowledge of her protected activity and his participation in the decision to suspend her for three days.

Defendant argues that, even in the face of a finding that a prima facie case has been established, TSA has articulated a legitimate, non-retaliatory reason for their action and there is no evidence of pretext, therefore the claim fails. The Court does not agree. Plaintiff has adequately plead facts and law which create genuine issues sufficient to defeat summary judgment on the retaliation claim.

Although there is no argument (not even from Plaintiff) that some disciplinary action was warranted by Plaintiff's lapse of attention at her post, TSA does not succeed in establishing a legitimate, non-retaliatory reason for the <u>level</u> of discipline imposed on Plaintiff. Several factors point toward this failure:

1. Plaintiff's lack of any prior disciplinary action in the preceding two and a half years.

**ORDER ON DEF**
**SUMM JMT MTN- 9**

2. Suchower's inability to recall why she chose a three-day suspension despite her knowledge that she had the option of issuing a letter of reprimand or a "counseling letter." Montoya Decl., Ex. C, 28:21-29:19.

3. The failure of the record (specifically, Plaintiff's personnel file) to reflect that Assistant Director Rice, Suchower's reviewing superior, considered the <u>McDonnell Douglas</u> factors (or executed a "<u>Douglas</u> factors worksheet") in approving Suchower's sanction, as required by TSA policy. Montoya Decl. ¶ 20, Exs. L and N.

4. The absence of any evidence produced by Defendant that a three-day suspension for a first-time violation of this sort was standard practice at TSA, regardless of the gender of the offender.

This same failure of proof on Defendant's part also becomes a deciding factor when considering "pretext" – just as these facts undercut Defendant's ability to establish a non-retaliatory reason for its action, they also create circumstantial evidence that the agency's stated reason for imposing the suspension was merely pretextual to a retaliatory motive. This is sufficient, under the summary judgment standard, to defeat Defendant's motion.

The Court notes in passing two other issues raised by Plaintiff in support of her opposition to Defendant's summary judgment motion, neither of which seem relevant or probative. One regards an alleged statement to Plaintiff by the (then) deputy federal security director for TSA at SeaTac, John DellaJacono, that there would be no suspension of any duration for an "inattention to duty" violation. DellaJacono denies making this statement and Plaintiff argues that she has created a "genuine issue of disputed material fact" with her allegation. But Plaintiff fails to establish the materiality of the factual issue, since DellaJacono is not alleged to have had any involvement in the disciplinary decision-making process.

**ORDER ON DEF
SUMM JMT MTN- 10**

1       Plaintiff also considers significant the fact that a blank, unsigned letter of termination was placed in her file right after the incident at issue. She argues that the presence of the letter in her file (when the violation for which she was ultimately disciplined – "inattention to duty" – is not a "firing offense") is further indication of a discriminatory or retaliatory motive. The Court finds Defendant's response to this allegation (that the letter was created while Suchower was still considering charging Plaintiff with falling asleep at her post, for which she could have been terminated) suitable and further finds that Defendant rebuts Plaintiff's allegation that the letter is visible to anyone with access to Plaintiff's personnel file (it is in a Human Resources file, not Plaintiff's personnel file, and was only retained because Plaintiff challenged the suspension decision). Def Reply, pp. 9-10. Ultimately, the Court does not find either of these arguments helpful.

**Conclusion**

      Defendant has established that, concerning Plaintiff's gender discrimination claim, there are no disputed issues of material fact and as a matter of law the claim is not supported and should be dismissed. Regarding Plaintiff's claim of retaliation, the Court finds that Plaintiff has established a prima facie case on that issue as regards D.B. Rice and has presented sufficient evidence to prevent Defendant from establishing that its motives in issuing the three-day suspension were either non-retaliatory or non-pretextual. Summary judgment will thus be denied concerning the retaliation cause of action.

      The clerk is directed to provide copies of this order to all counsel of record.

Dated: November _3_, 2008

_____
Marsha J. Pechman
U.S. District Judge

ORDER ON DEF
SUMM JMT MTN- 11